# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

DAVID VAN NATTA and JEAN VAN
NATTA, f/k/a Jean McDonald,

|| Plaintiffs,

vs.

SARA LEE CORPORATION,

|| Defendant.

No. C05-4151-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
THE DEFENDANT'S MOTION TO
DISMISS COMPLAINT**

_____

## TABLE OF CONTENTS

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.* *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B.* *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. RULE 12(b)(6) STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*III.* *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A.* *Existence Of An ERISA Plan* . . . . . . . . . . . . . . . . . . . . . . . . 9
    *B.* *ERISA Preemption* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        *1.* *General ERISA preemption principles* . . . . . . . . . . . . . . . . 15
        *2.* *Ordinary preemption under § 514(a)* . . . . . . . . . . . . . 17
        *3.* *ERISA's savings clause* . . . . . . . . . . . . . . . . . . . . 23
        *4.* *ERISA's deemer clause* . . . . . . . . . . . . . . . . . . . . . . 29
        *5.* *Complete preemption under § 502* . . . . . . . . . . . . . . 31
    *C.* *ERISA Preemption And Removal Jurisdiction* . . . . . . . . . . . . 35
    *D.* *ERISA-Specific Pleading Requirements* . . . . . . . . . . . . . . . . . 40

*IV.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

## I. INTRODUCTION

This controversy requires this court to descend into the Serbonian bog[1] that has been created by the Employee Retirement Income Security Act (ERISA)'s remedial scheme. In its motion to dismiss, the defendant-employer seeks to dismiss the plaintiffs' claims on the grounds that their state law causes of action are preempted by ERISA and the plaintiffs' purported failure to state a claim under such. The plaintiffs have resisted, not surprisingly, because if their state-law claims are preempted, they are entitled only to the meager, and often inadequate in the eyes of this court, compensation provided for under ERISA. Thus, this court is called upon to decide whether the plaintiffs' claims are governed by, what at least one Supreme Court Justice has described as, an "unjust and increasingly tangled ERISA regime," whereby "'[v]irtually all state law remedies are preempted but very few federal substitutes are provided."[2]

---

[1] *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 454 & n.1 (3d Cir. 2003) (Becker, J., concurring). As Judge Becker aptly explained:

> A Serbonian bog is a mess from which there is no way of extricating oneself. E. Cobham Brewer, *The Dictionary of Phrase and Fable* 1121-22 (First Hypertext ed.). The Serbonian bog itself was between Egypt and Palestine. Strabo called it a lake, and said it was 200 stadia long, and 50 broad; Pliny made it 150 miles in length. Hume said that whole armies have been lost therein, as did Milton: A gulf profound as that Serbonian bog, / Betwixt Damiata and Mount Cassius old, / Where armies whole have sunk. Milton, *Paradise Lost*, ii. 592.

*Id.*

[2] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 222 (2004) (Ginsberg & Breyer, J.J., concurring) (quoting *DiFelice*, 346 F.3d at 456 (Becker, J., concurring)).

## A. Procedural Background

On October 31, 2005, David Van Natta and Jean Van Natta (collectively, the "Van Nattas") filed a complaint against Sara Lee Corporation ("Sara Lee") in the Iowa District Court in and for Buena Vista County. In their complaint, the Van Nattas alleged Sara Lee wrongfully denied Mrs. Jean Van Natta eligibility for and coverage of certain health care benefits under the Sara Lee Corporation Employee Health Benefit Plan (the "Plan"). Specifically, the Van Nattas asserted causes of action under Iowa state common law for bad faith breach of contract and Iowa Code Chapter 507B, Iowa's statute regulating insurance trade practices. On December 16, 2005, Sara Lee removed this action to federal district court, asserting this court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the Van Nattas' complaint implicated rights that arose exclusively under ERISA. Subsequent to the removal of this action, on December 22, 2005, Sara Lee filed a Motion To Dismiss the plaintiffs' complaint (Doc. No. 6). In its motion, Sara Lee alleged the Van Nattas' state law claims were completely preempted by ERISA, and that the Van Nattas had failed to state a claim upon which relief could be granted under ERISA. Specifically, Sara Lee argued the Van Nattas failed to plead that they exhausted the administrative claim remedies under the Plan. On February 28, 2006, the Van Nattas filed their Resistance To Defendant's Motion To Dismiss (Doc. No. 12). The Van Nattas argued their claims should not be dismissed for failure to exhaust administrative remedies under the Plan because questions of fact existed as to whether such remedies were properly exhausted. In addition, the Van Nattas averred Sara Lee waived its exhaustion defense by failing to notify the Van Nattas of the claims procedures. On this same day, however, the Van Nattas filed a Motion For Extension Of Time To Obtain New Counsel And Extension Of Time To File Motion To Dismiss (Doc. No. 13). In this motion, the Van Nattas requested additional time to file a response on the basis of their need to obtain new counsel

because their original attorney lacked experience in federal court and did not wish to prejudice the Van Nattas by his continued representation. This court granted the Van Nattas' request on March 1, 2006 (Doc. No. 14). On April 3, 2006, the Van Nattas filed their Resistance To Motion To Dismiss Complaint (Doc. No. 15). However, the Van Nattas' April 3, 2006, resistance indicated they were unable to obtain new counsel and that they sought to stand on their original, February 28, 2006, resistance. The defendant thereafter filed its Reply Brief In Support Of Its Motion To Dismiss Complaint on April 7, 2006 (Doc. No. 16).

### B. Factual Background

As will be discussed more fully below, on a motion to dismiss, the court must assume all facts alleged in the Van Nattas' complaint are true and must liberally construe the allegations encompassed therein. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Consequently, the following factual background is drawn from the Van Nattas' complaint in such a manner.

On September 20, 2004, David Van Natta commenced employment at Sara Lee Corporation's Storm Lake facility. On this same date, David Van Natta elected group health care coverage under the Sara Lee Corporation Employee Health Benefit Plan for himself and his common law spouse, Jean Van Natta, formerly known as Jean McDonald. At the time of his election, certain representatives of the defendant represented that Jean Van Natta, as a common law spouse, would be covered under the health insurance policy. Following the standard thirty-day waiting period, Sara Lee began deducting the costs of the family health insurance policy out of David Van Natta's paycheck. On November 4, 2004, Jean Van Natta sustained injuries in an accident, which required medical treatment.

4

Sara Lee refused to pay for certain costs incurred by the Van Nattas as a result of Jean Van Natta's accident because she did not satisfy the definition of a "spouse" or "dependent" under the Plan.

## II. RULE 12(b)(6) STANDARDS

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 1(1982); *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). As alluded to previously, in considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are true, and must liberally construe those allegations. *See Conley*, 355 U.S. at 45-46; *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) ("When analyzing a 12(b)(6) dismissal, we accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff."); *Midwestern Mach., Inc. v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999) ("When ruling on a motion to dismiss, courts are required to accept the complaint's factual allegations as true and to construe them in the light most favorable to

the plaintiff."); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) ("In reviewing a motion to dismiss for failure to state a claim, we view the facts in the light most favorable to the claimant, taking the facts as found in the complaint as true") (citing *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir. 1998)); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997) ("In considering a motion to dismiss, we assume all facts alleged in the complaint are true, construe the complaint liberally in the light most favorable to the plaintiff, and affirm the dismissal only if 'it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief.'") (quoting *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994)); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) ("In considering a motion to dismiss, the court must construe the complaint liberally and assume all factual allegations to be true."). The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)); see *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (stating that the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts") (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 595-97 (1969)); *accord. LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir. 1995) (indicating the court "'need not accept as true legal conclusions or unwarranted factual inferences'") (quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the facts alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see Conley*, 355 U.S. at 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations'") (quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Mach., Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *see Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). Keeping these standards in mind, the court turns to consideration of the

merits of the parties' respective arguments with respect to the defendant's Motion To Dismiss.

## III.  LEGAL ANALYSIS

The defendant argues that the group policy at issue in this case is governed by ERISA, and as such, any state law claims are preempted.  Specifically, the defendant avers that the plaintiffs' claims on their face relate to and have a connection with the Plan, which is governed by ERISA, and thus, should be recast as a single wrongful denial of benefits claim under ERISA § 502(a)(1)(B).  Once recast as such, the defendant contends that dismissal of the plaintiffs' claims is required under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action upon which relief may be granted because the plaintiffs have failed to plead that they exhausted the administrative remedies available to claimants under the Plan.  The defendant relies upon a host of Eighth Circuit cases mandating exhaustion of administrative remedies in ERISA suits.  Without citing any case law, the plaintiffs resist the defendant's Motion To Dismiss, averring their claims are not preempted due to the "egregious" nature of the defendant's actions.  Further, the plaintiffs contend they are not required to plead administrative exhaustion as an element of their well-pleaded complaint because exhaustion is an issue of fact to be determined through discovery.  Alternatively, the plaintiffs contend the defendant failed to notify the plaintiffs their claim had been denied and of the appropriate appeal procedures, making exhaustion impossible.  Finally, in the event the defendant's Motion To Dismiss is granted, the plaintiffs request the dismissal be granted without prejudice so that they may be given an opportunity to properly recast their claims as a denial of benefits under ERISA.

## A. Existence Of An ERISA Plan

The question of whether ERISA applies to a particular plan or program requires an evaluation of the facts combined with an interpretation of the law. *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994) (stating that the existence of an ERISA plan is a mixed question of fact and law). Pursuant to 29 U.S.C. § 1002 there are two types of "employee benefit plans," to wit: employee welfare benefit plans and employee pension benefit plans. This case involves only the first type of plan, an employee welfare benefit plan. The court will therefore limit its discussion to employee welfare benefit plans. ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1). "'To qualify as a plan, fund, or program under ERISA, a reasonable person must be able to ascertain the intended benefits, a class of beneficiaries, source of financing, and procedures for receiving benefits.'" *Northwest Airlines, Inc. v. Fed. Ins. Co.*, 32 F.3d 349, 354 (8th Cir. 1994) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)); *see Bannister v. Sorenson*, 103 F.3d 632, 636 (8th Cir. 1996) (citing with approval the *Donovan* factors); *Harris v. Ark. Book Co.*, 794 F.2d 358, 360 (8th Cir. 1986) (same). There is no requirement under ERISA that the employer play any role in the administration of the plan in order for it to be deemed an employee welfare benefit plan. *Robinson v. Linomaz*, 58 F.3d 365, 368 (8th Cir. 1995)

(citing *Donovan*, 688 F.2d at 1374); *see Randol v. Mid-West Nat'l Life Ins. Co.*, 987 F.2d 1547, 1551 (11th Cir. 1993) ("[A] commercially purchased insurance policy under which the procedures for receiving benefits are all dictated by the insurance carrier can constitute a plan for ERISA purposes."). Indeed, the Eighth Circuit stated that an "employer's purchase of an insurance policy to provide health care benefits for its employees can constitute an E[mployee ]W[elfare ]B[enefit ]P[lan] for ERISA purposes." *Robinson,* 58 F.3d at 368 (citing *Madonia v. Blue Cross & Blue Shield*, 11 F.3d 444, 447 (4th Cir. 1993) (stating that "under the statutory definition of an employee welfare benefit plan, employers may easily establish ERISA plans by purchasing insurance for their employees")). Notwithstanding, in order for the policy in this case to be deemed an employee welfare benefit plan for ERISA purposes, it must be "established or maintained" by the employer. 29 U.S.C. § 1002(3).

In the case at bar, the defendant attached a copy of the written Plan document as an exhibit to its Motion To Dismiss.[3] The written Plan document clearly indicates the Plan

---

[3]It is not error for this court to examine the Plan in its consideration of the merits of the defendant's motion to dismiss under Rule 12(b)(6), even though it was not expressly part of the pleadings. This is so because it was incorporated into the pleadings by reference—the complaint specifically mentioned it as the Plan under which the Van Nattas' claims arose against Sara Lee. *See Deerbrook Pavilion, L.L.C. v. Shalala*, 235 F.3d 1100, 1101 (8th Cir. 2000) (stating that "[o]n a motion to dismiss, a court must primarily consider the allegations contained in the complaint, although matters of public and administrative record referenced in the complaint may also be taken into account"); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (indicating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim"); *see also Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 n.2 (8th Cir. 2005) (examining a press release even though it was not expressly part of the pleadings because it was incorporated by reference into the
(continued…)

is intended to qualify as an employee welfare benefit plan under Section 3(1) of ERISA. *Sara Lee Corporation Employee Benefit Plan*, § 1.1, ¶ 1, at 1 (as amended and restated January 1, 2003) (hereinafter *The Plan*). The group policy at issue outlines the employees' intended health benefits, which include hospital, surgical, dental and other medical expense and health care benefits. *Id.* Specifically, Section 1.1 states as follows:

> The Sara Lee Corporation Employee Health Benefit Plan has been established by Sara Lee Corporation (the "Company") to provide hospital, surgical, dental and other medical expense and health care benefits for eligible Employees of the Company and the other Employers under the Plan and their eligible Dependents. The Plan is maintained for the exclusive benefit of certain current and former Employees of the Company and of any division, Subsidiary or Affiliate of the Company which adopts the Plan (and such Employees' Covered Dependents). The Plan (other than the Pretax Premium Option and the Dependent Care Spending Account Option) is intended to constitute an employee welfare benefit plan under Section 3(1) of ERISA.

*Id.* The policy further delineates the terms and conditions relating to eligibility and coverage, and the proper protocol Sara Lee requires when setting forth a claim. In addition, the Plan indicates it is administered by the Sara Lee Corporation Employee Benefits Administrative Committee ("the Committee"). *Id.* at § 1.3, at 2; *id.* at § 2, at 4; *see id.* at Appendix, Definitions, at 52 (defining "Committee"). The beneficiaries under this policy were the employees of Sara Lee. In light of this undisputed evidence, the court finds that it would have been obvious to a reasonable person that the policy at issue is an

---

[3](…continued)
pleadings).

employee welfare benefit plan. *See Donovan*, 688 F.2d at 1367 (In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits).

However, the court's inquiry as to whether this policy falls within the purview of ERISA does not stop here. The dispositive question becomes whether the plan or program is "established or maintained" by the employer. 29 U.S.C. § 1002(3); *see Robinson*, 58 F.3d at 368. The Department of Labor, pursuant to 29 U.S.C. § 1135, promulgated a safe harbor regulation explaining when an employer may be involved with an employee welfare benefit plan without having "established or maintained" it. Consequently, although not argued by the plaintiff, the court must analyze whether this policy falls within the safe-harbor regulation established by the Department of Labor. This regulation provides in pertinent part:

> an employee welfare benefit plan shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which: (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

29 C.F.R. § 2510.3-1(j). It is only when all four of the "safe harbor" provisions are satisfied that an employer is not considered to have "established or maintained" the

program or plan, thereby escaping ERISA's preemption. *See Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 435 (6th Cir. 1996); *Grimo v. Blue Cross/Blue Shield*, 34 F.3d 148, 150 (2nd Cir. 1994); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988) (per curiam). Here, even if the court assumes, as it must on a motion to dismiss, that the plaintiffs could establish the first, second and fourth elements of the safe-harbor four-part test outlined above, it is clear, based on the express language of the written Plan document, that Sara Lee did considerably more than simply collect premiums, and that the third element cannot be satisfied by the plaintiffs.

As articulated in the written Plan document, the Committee has the sole discretionary authority to administer the Plan as outlined in the written Plan document. *Id.* at § 2, at 4. Thus, it is clear that pursuant to the written Plan document, Sara Lee's functions were more than advisory in nature. *See Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1134 (1st Cir. 1995) ("It is only when an employer purposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture."). For example, pursuant to the written Plan document, the Committee has the sole discretionary authority to adopt rules and procedures necessary to effectuate the efficient administration of the Plan. Second, the written Plan document bestows the Committee with the discretion to determine which employees are eligible for coverage under the policy and also to dictate the benefits an employee could obtain. *See Kulinski*, 21 F.3d at 257 (indicating that a plan qualifies as an ERISA plan where the employer has a need to create an administrative system in order to determine the employee's eligibility for and level of benefits); *see also Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir. 1990) (considering, *inter alia*, employer's role in devising eligibility requirements when determining if benefit plan was governed by ERISA). In addition, under the terms of the written Plan document in this case, the

Committee is responsible for paying premiums or other charges due on account of any Plan benefits and paying benefits on behalf of the employees. *See Bonestroo v. Cont'l Life & Accident Co.*, 79 F. Supp. 2d 1041, 1047 (N.D. Iowa 1999) (noting, as a factor in favor of finding the existence of an ERISA plan, that the employer paid certain premiums). A group plan with the level of employer involvement and lack of employee autonomy is the type of plan ERISA was designed to govern. *See Johnson*, 63 F.3d at 1133 (describing that where the employer offends the ideal of employer neutrality, as a result of its level of involvement, ERISA is properly invoked). Thus, Sara Lee did not merely advise the group insurance; rather, it endorsed the group health insurance plan within the meaning of the regulation. Accordingly, the insurance plan fails to satisfy the requirements of the safe harbor outlined in 29 U.S.C. § 2510.3-1(j)(3) and therefore, qualifies as an employee welfare benefit plan under ERISA.

## B. ERISA Preemption

Based on this court's previous conclusion that the Plan is governed by ERISA, the court must now determine whether the plaintiffs' state law claims are preempted, and if so, whether this provides the basis for federal question jurisdiction. Accordingly, the court is now "'forced to enter the ERISA preemption thicket,'" *see Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1184 (10th Cir. 2003) (quoting *Gonzales v. Prudential Ins. Co. of Am.*, 901 F.2d 446, 451-52 (5th Cir. 1990)), a most treacherous path, indeed, and an area of law that has oft troubled the courts of appeals and the Supreme Court. *See, e.g., Painter v. Golden Rule Ins. Co.*, 121 F.3d 436, 438-39 (8th Cir. 1997) (noting the Supreme Court's struggles with ascertaining and interpreting the scope of ERISA preemption).

## 1.     *General ERISA preemption principles*

ERISA is a comprehensive statute drafted to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987).    "The statute imposes participation, funding, and vesting requirements on pension plans.    It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983).    In conformity with Congress's express intent to create a comprehensive and uniform federal vehicle for regulations of employee benefit plans, ERISA's preemption clause is drafted in broad terms. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990).

Essentially, there are two components to ERISA's extensive preemptive force. *See Metro. Life Ins. Co. v. Taylor*, 471 U.S. 58, 66 (1987).    First, ERISA § 514(a) expressly preempts all state laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).[4]    In interpreting this language, the Supreme Court has

---

[4]The conundrum presented by ERISA is demonstrated by the fact that some circuits, for example the Fifth and the Tenth, refer to this section as ERISA's "conflict preemption" provision, and alternatively reference § 502 as ERISA's "complete preemption" provision, in complete opposition to the designations applied by the Eighth Circuit. *Compare David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1136-37 (10th Cir. 2005) (defining ERISA's "relate to" preemption under § 514 as "conflict preemption," and preemption by virtue of § 502(a) as "complete preemption"), *and Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) (same), *with Painter*, 121 F.3d at 439 (describing conflict preemption as arising under § 502(a)).  Even decisions within circuits are somewhat conflicting in the labels that are allocated to ERISA's two preemptive components.  For example, the Tenth Circuit has also referred to preemption under § 502 as "conflict[ing] with ERISA's remedial scheme," and preemption under § 514 as "direct
(continued...)

uniformly given the Act's preemptive scope a broad construction. *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997); *Ingersoll-Rand Co.*, 498 U.S. at 138. Recognizing that the term "relates to" cannot reasonably be applied to its logical end, however, the Court has clarified the language by stating it must be applied with the objectives of ERISA and the effect of the state law in mind. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). Additionally, this section is qualified by a "savings clause," which exempts "state law[s] . . . which regulat[e] insurance, banking, or securities . . . ." from preemption. 29 U.S.C. § 1144(b)(2)(A).

Second, ERISA § 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. *See* 29 U.S.C. § 1132(a). The preemptive force of this ERISA subsection likewise casts a broad net. *See Painter*, 121 F.3d at 439 (describing preemption as existing when a state law conflicts with a specific portion of the complex ERISA statute) (citing *Boggs v. Boggs*, 520 U.S. 833 (1997)); *see also Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 154 F.3d 812, 819 n.4 (8th Cir. 1998) (same) (citing *Painter*). A state cause of action that would fall within the scope of this remedial scheme is preempted as conflicting with the intended exclusivity of the remedies provided for by ERISA's remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a). *See Davila*, 542 U.S. at 214 n.4. In accord with Congress's purpose of creating a uniform regulation, ERISA's civil enforcement provision is a comprehensive remedial scheme. Indeed, the Supreme Court has stated:

---

[4](…continued)
preemption." *See Allison v. UNUM Life Ins. Co. of Am.*, 381 F.3d 1015, 1025-26 (2004). For the purposes of clarity, this court chooses to refer to preemption under § 514 as "ordinary preemption" and preemption under § 502 as "complete preemption."

> "[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."

*Id.*(quoting *Pilot Life Ins. Co.*, 481 U.S. at 54). Consequently, a claim that "duplicates, supplements, or supplants the remedies provided by ERISA runs afoul of Congressional intent and is preempted. *Id.* (citing *Pilot Life Ins. Co.*, 481 U.S. At 54-56; *Ingersoll-Rand Co.*, 498 U.S. at 143-45). Thus, the first question this court must definitively determine an answer to is whether the Van Nattas' claims of state law breach of contract, negligence and a violation of Iowa Code Chapter 507B on the part of Sara Lee fall under either of ERISA's broad peremptory strands.

### 2.    Ordinary preemption under § 514(a)

The court will begin its discussion with § 514(a) of ERISA, as set forth in 29 U.S.C. § 1144(a). Under this section, Congress specifically preempted "all State laws insofar as they may now or hereafter relate to any employee benefit plan."[5] Statutory

---

[5]The full text provides:

> Except as provided in subsection (b) of this section, the

(continued...)

mandates, court decisions, and state law from all other sources are encompassed by ERISA's panoptic preemption clause. 29 U.S.C. § 1144(c)(1). "[T]he question of whether a certain state law is preempted by federal law, in this case, ERISA, is one of congressional intent. "'The purpose of Congress is the ultimate touchstone.'" *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 (1985) (internal quotation marks omitted) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)). In this regard, the Supreme Court has left no doubt that Congress intended the preemption clause to have a sweeping effect. *See Ingersoll-Rand,* 498 U.S. at 138 ("[The preemption clause's] deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern.") (quotations omitted); *FMC Corp. v. Holliday,* 498 U.S. 52, 58 (1990) ("The preemption clause is conspicuous for its breadth."). The crucial question in determining whether a state law is preempted is whether the state action "relates to" an ERISA plan. *See* 29 U.S.C. § 1144(a). However, because Congress did not define what it meant by state laws that "relate to" an ERISA benefit plan anywhere in the statute, the Supreme Court has struggled with the inherent nebulousness of that crucial statutory phrase. *Compare N.Y. State Conf. of Blue Cross & Blue Shield Plans v.*

---

[5](...continued)

> provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). "Subsection b" is a reference to § 514(b)—the "savings clause,"—which exempts certain state laws from preemption. The breadth and applicability of ERISA's savings clause will be explored more fully in other portions of this opinion.

*Travelers Ins. Co.*, 514 U.S. 645, 652-661 (1995), *with Metro. Life Ins. Co.*, 471 U.S. at 739; *see Prudential Ins. Co. of Am.*, 154 F.3d at 815 (noting the Supreme Court's struggles with the scope of ERISA preemption under § 1144(a)); *Painter*, 121 F.3d at 438-39 (same). Unfortunately, as a result of this obscurity, as the Eighth Circuit has noted, the Supreme Court's decisions do not provide a bright-line method for determining whether a state action is preempted.[6] *See Kuhl v. Lincoln Nat. Health Plan of Kan. City, Inc.*, 999 F.2d 298, 302 (8th Cir. 1993) ("[T]he Court's decisions do not provide a clear-cut method for determining whether a state law which merely has some unintended effects of ERISA-governed plans will be preempted.").

---

[6]Indeed, the court in *Prudential Insurance Co. of America v. National Park Medical Center, Inc.*, analogized the task of determining the scope of ERISA's "relate to" preemption to unraveling a Gordian knot. 154 F.3d at 818. The legend of the Gordian knot was aptly explained by the *Prudential* court as follows:

> Gordius, King of Phrygia, tied his chariot to a hitching post before the temple of an oracle with an intricate knot, which, it was prophesied, none but the future ruler of all Asia could untie. *See, e.g., Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend* 460 (Maria Leach, ed., Funk & Wagnalls, 1972); *Bulfinch's Mythology* 44 (Richard P. Martin, ed., 1991). In the course of his conquests, Alexander the Great came to Phrygia, and, frustrated with his inability to untangle the "Gordian knot," simply sliced through it with his sword. His subsequent success in his Asian campaign has been taken to mean that his solution to the "Gordian knot" fulfilled the prophesy. *See, e.g., Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend* 460 (Maria Leach, ed., Funk & Wagnalls, 1972); *Bulfinch's Mythology* 44 (Richard P. Martin, ed., 1991).

However, in an attempt to at least provide the lower courts with a starting point, the Supreme Court has delineated a two-part inquiry to be employed in order to ascertain whether a state law "relates to" an employee benefit plan covered by ERISA. *See Shaw*, 463 U.S. at 96-97. "A law [clearly] 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id*. Thus, clearly state laws that explicitly reference ERISA plans are laws that "relate to" those plans and are preempted by ERISA. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988) (finding Georgia antigarnishment provision that singled out ERISA plans for different treatment was preempted); *see, e.g., also Pilot Life Ins. Co.*, 481 U.S. at 47-48; *Metro. Life Ins. Co.*, 471 U.S. at 739; *Shaw*, 463 U.S. at 96-97. These cases—where the state laws at issue expressly reference an ERISA employee welfare benefit plan within the statutory text—are relatively easy to determine.

However, based on its comprehensive nature, ERISA's preemption clause is not limited solely to laws that relate to specific provisions of the statute. *See Kuhl*, 999 F.2d at 302 ("ERISA's preemption clause is not limited to laws which relate to the specific provisions of ERISA."). Rather, a state law may also "relate to" an employee benefit plan and, consequently, be preempted, even though the state law's effect on benefit plans is only incidental. *Ingersoll-Rand*, 498 U.S. at 139. These cases, where the state law's effect on ERISA-encompassed employee welfare benefit plans, are the more difficult types of cases to ascertain the proper outcome. Further adding to the confusion is the fact that despite Congress's intention that ERISA cut a wide swath of preemption through state laws, the Supreme Court has recognized certain limitations: "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21; *see also Mackey*, 486 U.S. at 841 (holding that a specific provision of Georgia's garnishment

statute was preempted by its express reference to ERISA plans, but at the same time, refusing to extend ERISA preemption to Georgia's entire garnishment procedure). Thus, the Court's decisions do not provide a clear-cut method for determining whether a state law which merely has some unintended effects on ERISA-governed plans will be preempted. However, in implicit recognition of the fact that the Supreme Court's guidance often can only obscure the issue, the Eighth Circuit has held that a variety of tests can provide assistance when determining the effect of a state law on an ERISA plan. *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 630 (8th Cir. 2001). One such test was set forth by the Eighth Circuit in *Prudential Insurance Co. of America*, 154 F.3d at 822. There, the Eighth Circuit opined that a claim relates to an ERISA plan when it "premises a cause of action on the existence of an ERISA plan . . . ." *Id.*

Applying the Eighth Circuit's test to the case at bar, it is clear the Van Nattas' state law claims are preempted in their entirety. Reducing the Van Nattas' complaint to its core reveals the fact that all of their state law claims are premised upon alleged improper processing of a claim for benefits under an employee-benefit plan. As the Supreme Court and Eighth Circuit have previously reiterated, such claims undoubtedly meet the criteria for preemption under § 514(a), even if the state statutes at issue do not expressly make reference to ERISA plans. *See Pilot Life Ins. Co.,* 481 U.S. at 47-48 (finding that the plaintiff's claims, each based on alleged improper processing of a claim for benefits under a qualified ERISA plan, "undoubtedly" met the criteria for preemption under § 514(a), despite the fact the state laws at issue did not expressly reference ERISA plans); *Kuhl*, 999 F.2d at 302 (having no difficulty concluding the plaintiffs' claims, all arising from the administration of benefits under a qualified ERISA plan were preempted by ERISA); *see also Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 771-72 (8th Cir. 2006) ("ERISA preempts 'state common law tort and contract actions asserting improper

21

processing of a claim for benefits' under an ERISA plan.") (quoting *Pilot Life Ins. Co.*); *Fink v. Dakotacare*, 324 F.3d 685, 689 (8th Cir. 2003) (holding that state law causes of action arising from improper processing of a claim for benefits are preempted); *Howard v. Coventry Health Care, of Iowa, Inc.*, 293 F.3d 442, 446 (8th Cir. 2002) (holding that the plaintiffs' causes of action were preempted because their claims were premised on the existence of an ERISA plan); *Thompson v. Gencare Health Sys., Inc.*, 202 F.3d 1072, 1073 (8th Cir. 2000) ("ERISA remedies preempt 'state common law tort and contract actions asserting improper processing of a claim for benefits' under an ERISA plan.") (quoting *Pilot Life Ins. Co.*); *Hull v. Fallon*, 188 F.3d 939, 943 (8th Cir. 1999) (holding that where the basis of state claims for medical malpractice relates to the administration of plan benefits, those claims "fall squarely within the scope" of ERISA); *accord McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 429 (7th Cir. 2005) (finding that the plaintiff's state law claims premised on the defendants' failure to give the plaintiff the benefits under the medical plan he had been promised were preempted); *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 328 (2d Cir. 1985) (citing numerous cases finding claims for recovery of benefits preempted by ERISA), *aff'd*, 477 U.S. 901 (1986); *Schwartz v. Newsweek, Inc.*, 653 F. Supp. 384, 389 (S.D.N.Y. 1986) (citing decisions holding claims for recovery of alleged benefits preempted under ERISA), *aff'd*, 827 F.2d (1987). The Van Nattas' claims can fare no better, as they arise solely out of alleged improper administration of plan benefits, namely the alleged faulty denial of benefits to Mrs. Van Natta, Mr. Van Natta's purported spouse. This is particularly true in light of the fact that the Van Nattas do not attempt to distinguish their claims from *Pilot Life* and *Kuhl*. Having found that the Van Nattas' claims are subject to ordinary preemption by operation of § 514, the court must now consider whether either of these state statutes can

escape ERISA preemption by falling within the scope of ERISA's savings clause and qualifying as a state law that regulates insurance.

### 3.    ERISA's savings clause

The "savings clause" excepts from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).[7] The savings clause provides that "nothing in this sub-chapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance. . . ." *Prudential Ins. Co. of Am.*, 154 F.3d at 826; *see United of Omaha v. Bus. Men's Assurance Co. of Am.*, 104 F.3d 1034, 1039 (8th Cir. 1997) ("The savings clause excepts from preemption certain categories of state law, including state law that regulates insurance."). The Supreme Court first considered the scope of the ERISA "savings clause" in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. at 740. The Supreme Court first took a "common sense" view of the question whether a state law was one "which regulates insurance." *Id.* at 742-43. Thus, in *Metropolitan Life*, the Court concluded a Massachusetts mandated-benefit statute was a law which regulated insurance. In order to buttress this conclusion, the *Metropolitan Life* court relied upon cases interpreting the McCarran-Ferguson Act, which defines the "business of insurance," through the employment of a four-factor analysis. Unfortunately, this led to much confusion in the lower federal courts. *See Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 339-40 (2003) ("We believe that our use of

_____

[7]The "savings clause" is itself qualified by the "deemer clause," which states that neither an ERISA plan nor a trust created by such a plan "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B). The applicability of the deemer clause will be discussed in a later portion of this opinion.

the McCarran-Ferguson case law in the ERISA context has misdirected attention, failed to provide clear guidance to lower federal courts, and, as this case demonstrates, added little to the relevant analysis."). Consequently, in 2003, the Supreme Court clarified the correct analysis to be applied to the ERISA savings clause in *Kentucky Association of Health Plans, Inc. v. Miller*. There, the Court pointed out that it had never mandated employment of the McCarran-Ferguson factors to ERISA cases. *Id.* at 341. Rather, the *Miller* court clarified that the McCarran-Ferguson factors were intended to serve only as mere "considerations [to be] weighed," "checking points" or "guideposts." *See id.* (internal quotations omitted) (relying on *Pilot Life Ins. Co.*, 481 U.S. at 49*; UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 374 (1999); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 373 (2002)). Accordingly, in *Miller*, the Court jettisoned the McCarran-Ferguson factors from its analysis and adopted a two-part test. *Id.* ("We make a clean break from the McCarran-Ferguson factors . . . ."). After *Miller*, for a state law to be deemed a "law . . . which regulates insurance" under § 1144(b)(2)(A), and thus, be exempt from traditional ERISA preemption such law must be (1) "specifically directed toward entities engaged in insurance", and (2) "substantially affect the risk pooling arrangement between the insurer and the insured." *Id.* at 342 (internal citations omitted).

Here, the Van Nattas' complaint can be read as raising essentially two claims: a common-law bad faith breach of contract claim and a claim under Iowa Code Chapter 507B. The court will proceed to address the applicability of the savings clause to each of these claims separately. First, with respect to the Van Nattas' common-law bad faith breach of contract claim, it is clear that a state law bad faith cause of action against an ERISA provider is expressly preempted. In order to be characterized as a state law regulating insurance, the law must be "specifically directed toward that industry." *Pilot Life Ins. Co.*, 481 U.S. at 50. Stated differently, the state law must "home[ ] in on the

24

insurance industry." *Ward*, 526 U.S. at 368. The Iowa courts have not confined common law, bad faith causes of action to the insurance industry. Rather, it is a general law, applicable to the entire panoply of contracts. Accordingly, the plaintiffs' common law bad faith cause of action is not saved from preemption by ERISA's savings clause. *See Pilot Life Ins. Co.*, 481 U.S. at 51 (holding that a state common law of bad faith was not "integral" to the insurer-insured relationship), *Kidneigh*, 345 F.3d at 1186-87 (holding that bad faith claims do not "substantially affect the risk pooling arrangement" between insurers and their insured).

With respect to the Van Nattas' claim under Iowa Code Chapter 507B, however, the analysis becomes more complex. The stated purpose of Iowa Code Chapter 507B is "to regulate trade practices *in the business of insurance* . . . ." *Iowa Code* § 507B.1. While the plaintiffs do not delineate with any sort of particularity the code provision their claims are premised upon, it is a logical assumption, based on the facts and wording of the complaint, that they intend to assert a claim under Iowa Code § 507B.3, which prohibits unfair and deceptive acts or practices. However, it does not appear that a private cause of action is available to the plaintiffs under this statute. *See Lee County v. IASD Health Serv. Corp.*, 2000 WL 290367, at *2 n.4 (Iowa Dist. Ct. 2000) (noting the plaintiffs dismissed their claim of negligence per se based on violations of § 507B on the grounds that no private cause of action exists for such violations) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 228 (Iowa 1998)). This conclusion is bolstered by the statutory text itself, which solely bestows the authority to examine, investigate and charge a person with violations of Chapter 507B with the insurance commissioner and fails to authorize any private cause of action. *See generally Iowa Code* § 507B.3 (authorizing commissioner to investigate consumer complaints); *id.* § 507B.6 (authorizing the commissioner to hold hearings); *id.* § 507B.7 (authorizing the commissioner to issue a

summary order directing the insurer to cease and desist from engaging in the deceptive act or practice). Thus, it is quite unlikely the Van Nattas are even able to pursue such a claim. Rather, pursuant to Chapter 507B, their method of recourse is limited to filing a complaint with the insurance commissioner under this section.

However, for the sake of argument, even assuming the Van Nattas could pursue a claim under Iowa Code Chapter 507B, such a claim would still not be saved from preemption by operation of the savings clause. With respect to the first prong of the *Miller* test, it is patently obvious that Iowa Code Chapter 507B is limited to claims brought against an insurer pursuant to any insurance policy. Consequently, it is clear that the statute is directed towards entities engaged in insurance. Thus, the first prong of the *Miller* test is clearly satisfied by Iowa Code Chapter 507B. However, as mentioned previously, that is not the end of the analysis. In *Miller*, the Supreme Court stressed the importance of the second part of its test:

> We emphasize that conditions on the right to engage in the business of insurance must also substantially affect the risk pooling arrangement between the insurer and the insured to be covered by ERISA's savings clause. Otherwise, any state law aimed at insurance companies could be deemed a law that 'regulates insurance,' contrary to our interpretation of § 1144(b)(2)(A) in *Rush Prudential*, 536 U.S. at 364.

*Miller*, 538 U.S. at 338. Therefore, the fact that the statute has the word "insurance" in its title, which limits its application to entities within the insurance industry, is insufficient to support a holding that the statute regulates the business of insurance under the 'new' *Miller* test. Thus, in accord with the Supreme Court's more recent guidance, this court must now determine whether the Iowa Unfair Insurance Trade Practices statute

"substantially affect[s] the risk pooling arrangement between the insurer and the insured."
*Miller*, 538 U.S. at 342.

With respect to the second factor of the *Miller* test, it cannot go unstated that this factor closely mirrors the first McCarran-Ferguson factor—whether a state law has the effect of spreading a policyholder's risk. *Compare Pilot Life Ins. Co.*, 481 U.S. at 48-49 (stating the first McCarran-Ferguson factor as whether a state law has the effect of spreading a policyholder's risk), *with Miller*, 538 U.S. at 342 (stating the second *Miller* factor as whether the state statute "substantially affect[s] the risk pooling arrangement between the insurer and the insured). Thus, although the Court has jettisoned use of the McCarran-Ferguson factors, prior cases addressing this particular factor are logically instructive to a degree. *See, e.g. Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 276 (5th Cir. 2004) (noting that the *Miller* analysis did not, for all intents and purposes, significantly alter prior holdings utilizing the McCarran-Ferguson analysis because the differences between the second *Miller* factor and the first McCarran-Ferguson factor were less than noteworthy), *cert. denied*, 125 S. Ct. 2941 (2005); *Kidneigh*, 345 F.3d at 1188 (holding the Court's decision in *Miller* did not eviscerate the precedential value of pre-*Miller* case law); *see also Desrosiers v. Hartford Life & Accident Ins. Co.*, 354 F. Supp. 2d 119, 128 (D.R.I. 2005) ("While the tests are different, their inherent concepts are much the same . . . ."). Instructive in this regard, consequently, is the Court's decision in *Metropolitan Life*. There, the Supreme Court concluded that a Massachusetts statute satisfied the first McCarran-Ferguson factor because the section at issue "intended to effectuate the legislative judgment that the risk of mental health care should be shared." *Metro. Life Ins. Co.*, 471 U.S. at 743. As the Tenth Circuit explained in a case mirroring the one at bar, the mandated benefits in *Metropolitan Life* affected the spreading of risk, because the law required that a certain disease be covered under the

health insurance contracts. *See Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 466 (10th Cir. 1997). Thus, the mandated benefits spread the risk from the insured to the insurers and among the insureds themselves. *Id.* In contrast to mandated benefits, however, an unfair trade practices statute does not spread any risk among policyholders. It does not bring about a "change in the risk borne by insurers and the insured, because it does not affect the substantive terms of the insurance contract." *Id.* There is simply no indication that an insurance unfair trade practices statute intends for any risk of medical care to be shared. Rather, an unfair or deceptive trade practices statute is *remedial* in nature and acts as a resort to which the insured may turn when injured by its insurer.

This conclusion is further enforced for the reasons summarized in *Pilot Life*. Although *Pilot Life* is somewhat distinguishable because it dealt with a common law bad faith claim, the reasons apply with equal force to a state law claim of unfair or deceptive trade practices:

> In contrast to the mandated-benefits law in *Metropolitan Life*, the common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of the contract may in certain circumstances allow the policyholder to obtain punitive damages. The state common law of bad faith is no more "integral" to the insurer-insured relationship than any States's general contract law is integral to a contract made in that State.

481 U.S. at 51. Thus, "[a]ny-willing provider statutes, notice-prejudice rules, and independent review provisions all 'substantially affect[ ] the type of risk pooling arrangements that insurers may offer.'" *Kidneigh*, 345 F.3d at 1188. By contrast, Iowa's unfair or deceptive trade practices law does not define the relationship between the parties of an insurance contract. Rather, it simply states that certain practices are prohibited and

have legal consequences.[8]  Thus, in accordance with the principles enunciated in *Pilot Life*, Iowa Code Chapter 507B, is therefore, not "integral" to the insurer-insured relationship and is dissimilar from the law at issue in *Metropolitan Life*, which regulated the substantive terms of insurance policies by mandating certain benefits.  *See Denette v. Life of Ind. Ins. Co.*, 693 F. Supp. 959, 966 (D. Colo. 1988) (noting that statutes that do not purport to regulate the substantive terms or content of insurance polices do not spread the risk).  Thus, although in all likelihood the Van Nattas are precluded from bringing a private cause of action under Iowa Code Chapter 507B, even if they could, such a claim would still be preempted by ERISA and excluded from the realm of the savings clause.

### 4.     ERISA's deemer clause

Because this court has concluded the Van Nattas' claims are not "saved" from preemption by the savings clause, a discussion of the deemer clause is somewhat superfluous.  Suffice it to say that the deemer clause exempts self-funded ERISA plans from state laws that regulate insurance within the meaning of the savings clause.  A self funded plan is one where the employer does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its employees.  *See* Jill A. Alesch, Note, *The Americans with Disabilities Act:  An End to Discrimination Against HIV /AIDS Patients or Simply Another Loophole To Bypass?* 52 *Drake L. Rev.* 523, 527 (2004)

---

[8]This court recognizes that the threat of such claims may result in insurers passing on higher premiums to the insured.  *See, e.g.*, *Kidneigh*, 345 F.3d at 1198 (Henry, C.J., dissenting) (noting that the law at issue encouraged settlement of claims by making clear unwarranted delays would result in accentuated liability).  However, this court does not find such an argument to be persuasive.  The fact that the threat of such claims may result in higher premiums or place an additional burden on insurers to act in good faith in order to avoid increased awards is too attenuated and insufficient to be deemed to "substantially affect" the risk pooling arrangement.

(defining a self-funded plan as one in which "an employer pays participants' claims directly out of its own resources"); *see also FMC Corp.*, 498 U.S. at 54 (indicating self-funded plans are plans in which an employer "does not purchase an insurance policy from an insurance company in order to satisfy its obligations to its participants"). The Supreme Court expounded on the scope of the deemer clause in *FMC Corp. v. Holliday*:

> The deemer clause exempts self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer . . . . or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

498 U.S. at 61. In *FMC Corp.*, the Court recognized that its interpretation of the deemer clause resulted in a distinction between insured and uninsured plans, however, the Court felt it was merely effectuating a distinction Congress clearly intended to make. *Id.* With respect to the plan at issue in this case, it is not entirely clear from the complaint and

written Plan document whether it is an insured or self-funded plan. Section 4.3 of the written Plan document, which covers the funding of benefits indicates that the funding of benefits under the Plan varied: "As determined by the Company from time to time, benefits under the Plan may be provided on a self-insured basis, on a fully-insured basis under one or more contracts of insurance issued by an insurance company or HMO, or a combination of both." *The Plan*, § 4.3. Thus, as this section indicates, during the time period that the Van Nattas sought benefits for Mrs. Van Natta, it is entirely possible that the Plan at that time could have either been self-funded, insured, or a combination of both. However, based on its previous conclusion that the Van Nattas' claims are not saved from preemption, the Court does not need to resolve this issue.

### 5. *Complete preemption under § 502*

In addition to "ordinary" preemption, ERISA provides for complete preemption under § 502(a). Section 502(a), by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded. *Metro. Life Ins. Co.*, 481 U.S. at 66. This particular preemptive provision cuts a wide swath, which is evidenced by the fact that a state insurance provision, even if clearly falling within the scope of the insurance "savings clause," can be preempted by ERISA § 502 if the state provision provides additional remedies to an ERISA plan participant who sues for a mishandled claim. *See e.g. Davila*, 542 U.S. at 216-217 (holding § 502 overpowers ERISA's savings clause); *Rush-Prudential HMO v. Morgan*, 536 U.S. 355, 377 (2002) ("Although we have yet to encounter a forced choice between the congressional polices of exclusively federal remedies and the reservation of the business of insurance to the States, we have anticipated such a conflict, with the state insurance regulation losing out if it allows plan participants to obtain remedies that Congress rejected in ERISA."); *see also In Re Life Ins. Co. of N. Am.*, 857 F.2d 1190 (8th

Cir. 1988). For this proposition, the Eighth Circuit Court of Appeals relied on *Pilot Life*, in which the Supreme Court unequivocally indicated that Congress intended the civil enforcement provisions of ERISA to be the exclusive remedies available to claimants:

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." [*Mass. Mut. Life Ins. Co. v.*] *Russell*, [473 U.S. 134,] 146, 105 S. Ct. 3085 [1985]).

*Pilot Life Ins. Co.*, 481 U.S. at 54. Therefore, any state law cause of action that "duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209 (citing *Pilot Life Ins. Co.*, 481 U.S. at 54-56; *McClendon*, 498 U.S. at 65-66). Thus, even if the Van Nattas' claims were not preempted under ordinary ERISA preemption, their claims still could be preempted under § 502(a).

ERISA § 502(a)(1)(B) provides: "A civil action may be brought-(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court recently explained the extent of this provision in some detail in *Aetna Health Inc. v. Davila*:

This provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to "enforce his rights" under the plan, or to clarify any of his rights to future benefits. Any dispute over the precise terms of the plan is resolved by a court under a *de novo* review standard, unless the terms of the plan "giv[e] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Metropolitan Life,* [471 U.S.] at 66, 107 S. Ct. 1542. In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davila*, 542 U.S. at 210.

With respect to the current controversy before this court, it is clear that the Van Nattas primarily complain about denials of coverage promised under the terms of an ERISA-regulated employee benefit plan. When Mrs. Van Natta sought benefits under the Plan and did not receive them, the Van Nattas did not pursue their ERISA remedy but instead brought the present state-law claims. These are precisely the kinds of claims that the *Davila* Court held to be preempted under § 502(a).

For example, in *Davila*, the plaintiffs were denied coverage for certain medical services by their ERISA plan administrators. *Id.* at 204. Like the Van Nattas, the *Davila* plaintiffs forewent the opportunity to pursue their ERISA remedies and instead brought state tort claims to enforce duties of care imposed by state laws. *Id.* The Supreme Court held that the state causes of action were preempted even though the plaintiffs' claims were tort claims (in contrast to ERISA claims), they were based on an external state statutory duty, and they did not duplicate ERISA remedies. *Id.* at 214-16. As the *Davila* Court succinctly stated: "Congress'[s] intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." *Id.* at 216, *see also Pilot Life Ins. Co.*, 481 U.S. at 54 (stating that "policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA"); *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (holding that a complaint that seeks non-ERISA damages for what are essentially claim processing causes of action clearly fall within the ambit of § 1132 preemption exemplified by *Pilot Life*). Accordingly, the Van Nattas' state law claims, alleging improper processing of a claim for benefits, are completely preempted by ERISA's comprehensive civil enforcement scheme promulgated by Congress in § 502(a).

## C. ERISA Preemption And Removal Jurisdiction

Simply because the court has determined that the plaintiffs' claims are preempted under ERISA, however, does not necessarily establish that removal was proper. Rather,

such a determination requires a separate analysis. *See Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995) ("Removal and preemption are two distinct concepts."). Pursuant to 28 U.S.C. § 1441(a):

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending

28 U.S.C. § 1441. One such assemblage of cases which the federal district courts have original jurisdiction is what are known as "federal question" cases. Federal question cases are those cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It has long been settled that a cause of action "arises under" federal law, thereby conferring federal question jurisdiction and permitting removal to federal court, only if a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Metro. Life Ins. Co.*, 481 U.S. at 63; *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-12 (1983); *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936); *Louisville & Nashville R.R Co. v. Mottley*, 211 U.S. 149 (1908). This is what is known as the "well-pleaded complaint rule," and is "the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts. *Metro. Life Ins. Co.*, 481 U.S. at 63 (citing *Franchise Tax Bd.*, 463 U.S. at 9-12).

Typically, federal preemption is a defense to the plaintiff's claim. *Taylor*, 481 U.S. at 63. A federal defense to a plaintiff's state law cause of action ordinarily does not appear on the face of the well-pleaded complaint. Thus, a federal defense generally is insufficient justification to warrant removal to federal court as a result. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398 (1987) ("The fact that a defendant might ultimately prove that a

plaintiff's claims are pre-empted under [a federal statute] does not establish that they are removable to federal court."). However, one corollary of the well-pleaded complaint rule is that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co.*, 481 U.S. at 63-64. This is what has been referred to in case law as the "complete preemption" exception. *See, e.g.*, *Franchise Tax Bd.*, 463 U.S. at 23; *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995). "The complete preemption doctrine applies when the pre-emptive force of [the federal statute] is so powerful as to displace entirely any state cause of action [encompassed within the scope of the federal statute]." *Franchise Tax Bd.*, 463 U.S. at 23. A common example of the complete preemption doctrine at work are claims to enforce a collective-bargaining agreement under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. *See, e.g.*, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560-62 (1968). In *Avco Corp. v. Aero Lodge No. 735*, the Supreme Court held that any claims to enforce a collective-bargaining agreement, even if pled as a state law cause of action to enforce a contract, are removable to federal court. *Id.* In addition to claims under § 301 of the LMRA, the Supreme Court has determined that Congress intended the complete-preemption doctrine to apply to state law causes of action that fit within the scope of ERISA's civil-enforcement provisions. *Metro. Life Ins. Co.*, 481 U.S. at 66. In *Metropolitan Life*, the Court explicated:

> [T]he legislative history consistently sets out [Congress's] clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of [the Labor Management Relations Act of 1947, 29 U.S.C. § 185.] For example, Senator Williams, a sponsor of ERISA, emphasized that the civil enforcement section would enable participants and beneficiaries to bring suit to recover benefits denied

contrary to the terms of the plan and that when they did so "[i]t is intended that such actions will be regarded as arising under the laws of the United States, in a similar fashion to those brought under section 301 of the Labor Management Relations Act."

*Id.* In accord with the guidance set forth in *Metropolitan Life*, courts have found that the complete preemption doctrine—i.e. preemption under § 502(a)— permits removal of state law causes of action in a multitude of different ERISA-related circumstances. *See Dukes*, 57 F.3d at 355 (citing *Metro. Life Ins. Co.*, 481 U.S. at 63-67 (holding that state common law causes of action asserting improper processing of a claim for benefits under an employee benefit plan are removable to federal court); *Anderson v. Elec. Data Sys. Corp.*, 11 F.3d 1311, 1314 (5th Cir. 1994) (holding that removal was proper because state law claim alleging that plan fiduciary was demoted and terminated for refusing to violate ERISA fell within § 502(a)(2) & (3)); *Sofo v. Pan-American Life Ins. Co.*, 13 F.3d 239, 240-41 (7th Cir. 1994) (plaintiff's state court rescission claim against a group insurance policy for the policy's refusal to reimburse plaintiff for medical treatment received was properly removed because plaintiff's claim was for a denial of benefits); *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 8-12 (2d Cir. 1992) (common law claim for breach of an oral promise to pay pension-related benefits properly removed to federal court); *Lister v. Stark*, 890 F.2d 941, 943-44 (7th Cir. 1989) (plaintiff's state law claim challenging the calculation of his time of "uninterrupted service" for the purposes of calculating his pension benefits held removable)).

However, although somewhat counterintuitive, the complete preemption doctrine does not permit removal of all state-law actions that are preempted by ERISA. Rather, the majority of courts have distinguished between those state-law claims that are preempted under § 502, which are removable, and those claims that are preempted under § 514,

37

which are not removable. This distinction arises out of the Court's decision in *Franchise Tax Board*, 463 U.S. at 25-27. There, the Court held that ERISA preemption, *without more*, does not transmogrify a state law claim into an action "arising under" federal law. *Id*. However, the Court implied that a state action that not only was preempted by ERISA, but also came "within the scope of § 502(a) of ERISA" might fall within the complete preemption exception to the well-pleaded complaint rule. *Id*. at 24-25. Although the question was left unresolved in *Franchise Tax Board*, the Court resolved this issue definitively a few years later in *Metropolitan Life*, 481 U.S. at 64-67. There, the Court limited application of the complete preemption exception to the well-pleaded complaint rule, with respect to ERISA claims, to only those claims which fall within the scope of ERISA's civil enforcement provision, § 502. *Id*. State law claims falling outside the ambit of § 502, consequently, even if preempted by § 514, remain governed by the well-pleaded complaint rule, and therefore, are not removable to federal court under the complete-preemption principles enunciated in *Metropolitan Life*. *See id*. (stating that ERISA preemption under § 514(a) "without more, does not convert [a] state claim into an action arising under federal law"); *Franchise Tax Bd.*, 463 U.S. at 23-27 (implying that preemption under § 514(a) does not permit a defendant to remove a suit brought in state court to federal court when the plaintiff's state claim does not fall within the scope of ERISA's civil remedy provisions); *see also Giles*, 172 F.3d at 337-38 (holding state law claims that fall outside the realm of § 502, even if preempted by § 514, remain governed by the well-pleaded complaint rule and are therefore, not removable); *Dukes*, 57 F.3d at 355 (holding that a district court cannot resolve a dispute where a claim is preempted under § 514, but outside the scope of § 502 because it lacks removal jurisdiction); *Rice v. Panchal*, 65 F.3d 637, 639-40 (7th Cir. 1995) (noting that if the issue is merely preemption under § 514(a), it serves only as a federal defense, and the complaint should

not be recharacterized as federal); *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93-94 (3d Cir. 1989) (holding that § 514(a) preemption defense will not justify removal unless claim falls within the scope of ERISA's civil enforcement provision, § 502); *Warner*, 46 F.3d at 535 (that a claim is preempted under § 514(a) does not necessarily establish that the claim is removable); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272-73 (2d Cir. 1994) (state law professional malpractice claim against company hired by plaintiff's employer to provide psychotherapy services deemed outside the scope of § 502(a)(1)(B) and therefore not removable). Thus, the law of the cases suggests, then, that when a plaintiff's complaint raises state causes of action that are completely preempted under § 502(a), the district court may exercise removal jurisdiction because such a claim presents a federal question based on Congress's decision to so completely preempt this particular area. *Metro. Life Ins. Co.*, 481 U.S. at 64-67. Conversely, when a complaint contains only state causes of action that are merely preempted under § 514, a federal court must remand for want of subject-matter jurisdiction, and preemption will serve as a federal defense. *Id.* Lastly, it follows that when a complaint raises both a claim that is preempted under § 502 and a claim that is preempted under § 514, a federal court may exercise removal jurisdiction over the completely preempted claims and supplemental jurisdiction over the remaining claims. *See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 (5th Cir. 1990) (ensuring that at least one claim fell within the purview of § 502 preemption for jurisdictional purposes and then proceeding to address supplemental claims preempted under § 514).

Applying the these conclusions to the case at hand, it is clear that the Van Nattas' claims were properly removed to federal court. As determined in the previous portions of this opinion, the Van Nattas' claims are preempted under § 514. If the Van Nattas' claims were only preempted under this section, it would be insufficient to confer removal

jurisdiction over the Van Nattas' state-law claims. However, this is not the case. As this court has also previously determined, the Van Nattas' state-law claims also are completely preempted under § 502. As such, it is proper for this court to exercise removal jurisdiction because claims preempted under § 502 fall within the complete preemption exception to the well-pleaded complaint rule.

### D. ERISA-Specific Pleading Requirements

Because this court has determined that the Van Nattas' claims are preempted and subject to removal jurisdiction, the court will now examine the elements of the plaintiffs' complaints in order to determine if the claims can survive the defendant's motion to dismiss. The defendant contends that, once recast as an ERISA claim for wrongful denial of benefits, the plaintiffs' claims require dismissal based on their failure to plead exhaustion of the administrative remedies available under the Plan. The plaintiffs contend they are not required to plead this element in their complaint because it is an issue of fact. Alternatively, the plaintiffs contend they are exempted from this requirement because the defendant failed to provide them with proper notice of the denial of their claim and the appeal procedures available under the Plan.

ERISA does not contain an explicit requirement that employees exhaust the administrative, contractual remedies prior to filing a complaint. *Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994). However, the Eighth Circuit has recognized a judicially created exhaustion requirement under ERISA. *Kinkead v. Southwestern Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 70 (8th Cir. 1997). The Eighth Circuit case law subsequent to *Kinkead v. Southwestern Bell Corp. Sickness & Accident Disability Benefit Plan* has consistently imposed an exhaustion requirement where there is

notice provided to the claimant and where there is no showing of futility. *See, e.g.*, *Back v. Danka Corp.*, 335 F.3d 790, 792 (8th Cir. 2003) (holding exhaustion was not required where the plan failed to notify the plaintiff regarding the availability of a contractual remedy); *Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 770 (8th Cir. 2001) (holding that, within the Eighth Circuit, benefit claimants must exhaust administrative remedies before brining claims for wrongful denial to court); *Burds v. Union Pac. Corp.*, 223 F.3d 814, 817 (8th Cir. 2000) (finding exhaustion was required when it was clearly required under the plan at issue); *Schleeper v. Purina Benefits Ass'n*, 170 F.3d 1157, 1157 (8th Cir. 1999) (per curiam) (affirming dismissal for failure to exhaust administrative remedies and rejecting the plaintiff's argument that exhaustion would have been futile); *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 332 & n.4 (8th Cir. 1998) (recognizing the futility exception to the exhaustion requirement under ERISA); *Layes v. Mead Corp.*, 132 F.3d 1246, 1252 (8th Cir. 1998) (holding that a claimant's claim is barred when administrative remedies that are clearly required under an ERISA plan are not exhausted). Policy considerations supporting the exhaustion requirement include reducing the number of lawsuits under ERISA, aiding the court by assembling a fact record should judicial review be required, providing a nonadversarial method of dispute resolution, providing uniformity of results within a company, and minimizing the cost of dispute settlement. *See Wert v. Liberty Life Assurance Co. of Boston, Inc.*, 447 F.3d 1060, 1066 (8th Cir. 2006).

Recently, the Eighth Circuit reiterated and clarified its position with respect to the exhaustion of review procedures prior to bringing suit in federal court. *See generally id.* In *Wert v. Liberty Life Assurance Co. Of Boston, Inc.*, the plaintiff filed a claim for benefits under her insurance contract. *Id.* at 1061. She alleged disability based on a diagnosis of fibromyalgia. *Id.* Initially, the defendant denied Wert's claim as untimely.

*Id*. The defendant sent Wert a denial letter which provided notice of a contractual right of review. *Id*. Wert took advantage of the appeal procedure delineated in the letter and sought further review. *Id*. Upon further review, the defendant reversed its decision and granted Wert benefits under the contract. *Id*. at 1061-62. The defendant continued to compile records regarding Wert's physical condition throughout the time she was awarded benefits. *Id*. at 1062. Eventually, Wert received a letter notifying her she was not eligible for continuing benefits. *Id*. In the letter, the defendant again detailed the availability of a contractual review process, albeit in permissive language—i.e., "you may request a review." *Id*. After receiving this second denial letter, Wert elected not to pursue review as permitted under the contract and instead, instituted an action in federal court alleging a wrongful denial of benefits under ERISA. *Id*. Relying on the Eighth Circuit's decision in *Kinkead*, the district court granted summary judgment in favor of the defendant. *Id*. On appeal, Wert argued that exhaustion of administrative remedies was not required in her case because first, the denial letters failed to provide notice of an exhaustion requirement and second, the plan language, by virtue of its permissive language, merely established an optional review procedure that need not be exhausted prior to institution of a law suit. *Id*. at 1066. The Eighth Circuit rejected both of Wert's arguments. *Id*. First, the Eighth Circuit noted that *Kinkead* expressly foreclosed Wert's first argument because the *Kinkead* court held notice of the availability of review was sufficient and rejected the argument that a denial of benefits letter must expressly set forth and explain an exhaustion requirement. *Id*. Second, with respect to Wert's second argument, the Eighth Circuit did not find a compelling basis to distinguish between the application of *Kinkead*'s rationales in the context of denial letters or plan documents. *Id*. Thus, the Eighth Circuit held that "whether it is a denial letter or a plan document that uses permissive language to describe a review procedure, 'claimants with notice of an available review procedure should know

that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court.'" *Id.* (quoting *Kinkead*, 111 F.3d at 69). Thus, it is well-settled within the Eighth Circuit that an ERISA plaintiff must exhaust available administrative remedies prior to initiating suit in federal court. *Id.* However, the exhaustion requirement is subject to narrow exceptions reserved for exceptional circumstances. The Eighth Circuit has recognized two such circumstances. The first is where resort to administrative remedies would be futile. *See Beckham*, 138 F.3d at 332 & n.4. The second is where the claimant has no notice of the availability of a contractual review process. *Conley*, 34 F.3d at 717-18.

Here, however, in their complaint, the Van Nattas have not alleged they pursued any internal claim procedures as required under ERISA. While the Van Nattas are correct in their assertion that the ultimate outcome of this allegation turns upon a resolution of a factual dispute, they are still required to aver this precondition has been met in their complaint in order to survive a motion to dismiss. In addition, the Van Nattas have not alleged any of the limited exceptions in their complaint. Although in their brief in response to the defendant's motion to dismiss, the Van Nattas claim they were denied notice, their complaint is completely devoid of such a claim and in order to raise this exception, they are required to have pled it. *See Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160-61 (11th Cir. 1992) (determining no abuse of discretion regarding dismissal based on finding that plaintiff failed to plead exhaustion of administrative remedies or an exception); *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 & n.2 (11th Cir. 1995) (upholding district court's dismissal of ERISA benefits count where plaintiff neither pleaded nor recited facts showing that administrative remedies were exhausted under the plan or that an exception was applicable). Thus, the plaintiffs have failed to state a claim for which relief can be granted and Rule 12(b)(6) of the Federal

Rules of Civil Procedure mandates dismissal in this instance. Therefore, it is clear that the defendant's Motion To Dismiss should be granted. However, the court will not prematurely dispose of a case at this early stage before providing plaintiffs the opportunity to set forth cognizable claims under ERISA. Therefore, the plaintiffs shall have until **July 31, 2006,** in which to set forth claims under the express provisions of ERISA. If the plaintiffs fail to set forth such claims, the court will grant the defendant's Motion To Dismiss.

## IV. CONCLUSION

This case exemplifies why there is a "rising judicial chorus urging that Congress and the Supreme Court revisit what is an unjust and increasingly entangled ERISA regime." *See, e.g., DiFelice*, 346 F.3d at 467 (Becker, J., concurring) ("The vital thing . . . is that either Congress or the Court act quickly, because the current situation is plainly untenable."); *DiFelice*, 346 F.3d at 468 (Ambro, J. concurring) ("I implore for a better way to make these kinds of decisions."); *Cicio v. Does*, 321 F.3d 83, 106 (2d Cir. 2003) (Calabresi, J., dissenting in part) (the "gaping wound" caused by the breadth of preemption and limited remedies under ERISA, as interpreted by this Court, will not be healed until the Court "start[s] over" or Congress "wipe[s] the slate clean"); John H. Langbein, *What ERISA Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens, and* Great-West, 103 *Colum. L. Rev.* 1317, 1365 (2003) ("The Supreme Court needs to ⋯ realign ERISA remedy law with the trust remedial tradition that Congress intended [when it provided in § 502(a)(3) for] 'appropriate equitable relief.'"). Essentially, the current dissatisfaction stems from the fact that the Court has coupled a comprehensive interpretation of ERISA's preemptive force with a confined construction of the "equitable relief" allowable under § 502(a)(3), which has resulted in a "regulatory

vacuum" caused by the fact that "'virtually all state law remedies are preempted but very few federal substitutes are provided.'" *Davila*, 542 U.S. at 222 (Ginsberg & Breyer, J.J., concurring) (quoting *DiFelice*, 346 F.3d at 453) (Becker, J., concurring)). Thus, often it is the case that "persons adversely affected by ERISA-proscribed wrongdoing cannot gain make-whole relief," and a finding of preemption under ERISA, as is the case here, severely limits the type of remedies a plaintiff may seek. As such, ERISA, which was enacted to safeguard the interests of employees and their beneficiaries, has metastasized into what is essentially a shield of immunity that protects health insurers and other managed care entities from liability for the consequences of their allegedly wrongful actions. Indeed, in *Andrews-Clarke v. Travelers Ins. Co.*, 984 F. Supp. 49 (D. Mass. 1997), an obviously frustrated court lamented:

> Under traditional notions of justice, the harms alleged—if true—should entitle [the plaintiff] to some legal remedy on behalf of herself and her children against [the defendants]. Consider just one of her claims—breach of contract. This cause of action—that contractual promises can be enforced in the courts—pre-dates the Magna Carta. It is the very bedrock of our notion of individual autonomy and property rights. It was among the first precepts of the common law to be recognized in the courts of the Commonwealth and has been zealously guarded by the state judiciary from that day to this. Our entire capitalist structure depends on it. Nevertheless, this Court had no choice but to pluck [the plaintiff's] case out of the state court in which she sought redress (and where relief to other litigants is available) and then, at the behest of [the defendants], to slam the courthouse doors in her face and leave her without any remedy.

*Id.* at 52-53. As this court is bound to follow both Eighth Circuit and Supreme Court precedent, this case compels a like result. Consequently, this case becomes yet another glaring example of the need for Congress and the Supreme Court to put an end to the

sisyphean[9] frustration that has resulted from the Serbonian bog of ERISA preemption precedent. Until such action is taken, it is clear to this court that ERISA will continue to act as a shield of immunity, thwarting the often legitimate and serious claims of the very people ERISA was promulgated to protect.

For the aforementioned reasons, the defendant's Motion To Dismiss is hereby **granted** to the extent that the plaintiffs must, by **July 31, 2006, file an Amended Complaint** remedying the identified deficiency by alleging either that they have exhausted all relevant administrative remedies or that they are in possession of a legally sufficient justification for not doing so.

**IT IS SO ORDERED.**

**DATED** this 29th day of June, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[9] Sisyphus was a cruel king of Corinth who was doomed forever to roll a large boulder to a hilltop in Hades only to have it roll back. *The American Heritage College Dictionary* 1274 (3d ed. 1997). Thus, "sisyphean" means "[e]ndlessly laborious or futile." *Id.*